**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

ARTURO J. GUZMAN-VARGAS,

     **Plaintiff,**

         **v.**                    **CIVIL NO.** 01-1202 (FAB)

SILA MARIA CALDERON,
CESAR R. MIRANDA-RODRIGUEZ,
JOHN DOE, RICHARD ROE,

     **Defendants.**

**OPINION AND ORDER**

BESOSA, District Judge.

    This case is a long-standing civil rights action brought by
Arturo Guzman-Vargas ("Guzman" or "plaintiff") pursuant to 42
U.S.C. § 1983[1] against the Honorable Sila Maria Calderon-Serra, the
former Governor of Puerto Rico ("Governor"), and Cesar R. Miranda-
Rodriguez ("Miranda"), the Governor's Chief of Staff during the
relevant time period, hereinafter collectively referred to as
"defendants."  Defendants are sued in both their personal and

---

[1] Section 1983 of Title 42 of the United States Code provides, in
pertinent part:

> Every person who, under color of any statute, ordinance,
> regulation, custom or usage, or any State or Territory or the
> District of Columbia, subjects, or causes to be subjected, any
> citizen of the United States or other person within the
> jurisdiction thereof to the deprivation of any rights,
> privileges, or immunities secured by the Constitution and the
> laws, shall be liable to the party injured in an action at
> law, suit in equity, or other proper proceeding for redress.

official capacities.[2]  Plaintiff alleges that defendants unjustly dismissed him from his position as the President and non-*ex officio* member of the Board of Directors ("Board") for the Puerto Rico Corporation for Public Broadcasting ("PRCPB") in violation of rights guaranteed by the First and Fourteenth Amendments of the Constitution of the United States.  Plaintiff also raises pendant claims under Article II, sections 4, 6, and 7 of the Constitution of the Commonwealth of Puerto Rico, and under 1 L.P.R.A. §§ 11-13 (2005), protecting freedom of speech, political affiliation and civil rights.  The district court's jurisdiction is based on 28 U.S.C. §§ 1331, 1343(a)(3), and 1337.  Plaintiff seeks a judgment declaring that his discharge constitutes a violation of his constitutional and civil rights, an injunction vacating his discharge and prohibiting defendants from interference with his appointment, and compensatory and punitive damages in an amount to exceed one hundred thousand dollars ($100,000.00), plus costs and attorneys' fees.

Pending before the court are defendants' "Motion to Dismiss Under R. 12(b)(6) and/or for Summary Judgment" (defendants' motion) (Docket No. 59), which plaintiff opposes (Docket No. 62), and plaintiff's cross-motion for partial summary judgment (plaintiff's

---

[2] Plaintiff's claims for injunctive relief are brought against defendants in their official capacities; claims for compensatory damages are brought against defendants in their personal capacities.  (See Docket No. 41, ¶ 8)

cross-motion) (Docket No. 68), which defendants oppose (Docket No. 69).

## I.  Factual Background

The following facts are deemed uncontested because they are asserted in the parties' pleadings,[3] properly supported by the record,[4] and not genuinely opposed,[5] or are public law for which

---

[3] Plaintiff's Verified Amended Complaint is treated as the functional equivalent of an affidavit to the extent it satisfies the requirements of Fed.R.Civ.P. 56(e) ("Rule 56(e)").  See Sheinkopf v. Stone, 927 F.2d 1259, 1262 (1st Cir. 1991).  Rule 56(e) requires that affidavits submitted in support of or opposition to a motion for summary judgment be "made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated."

[4] The evidentiary record includes certain well-supported allegations in plaintiff's Verified Amended Complaint (Docket No. 41), see supra note 3, letter correspondence between plaintiff and defendants (Docket No. 59, Exhibits 3-7), Executive Order 2001-03 (Docket No. 59, Exhibit 2), and plaintiff's testimony, proffered on August 21, 2001 (see Docket Nos. 44).

[5] No fact stated in support of the parties' motions, or responses filed in opposition, is contested.  Plaintiff fails to admit, deny or qualify any fact submitted in support of defendants' motion (Docket No. 59), as required by Local Rule 56(c), and defendants do not admit, deny, or qualify plaintiff's separate statement of facts, submitted in opposition (Docket No. 62).  See Local Rule 56(d).  Similarly, defendants fail to admit, deny or qualify any fact stated in support of plaintiff's cross-motion (Docket No. 68), as required by Local Rule 56(c), and plaintiff does not admit, deny, or qualify defendants' separate statement of facts, submitted in opposition thereto (Docket Nos. 59; 69).  See Local Rule 56(d).

judicial notice is properly taken pursuant to Federal Rule of Evidence 201.[6]

The PRCPB is a creature of statute, created as an independent instrumentality of the Commonwealth of Puerto Rico pursuant to Law No. 216 of September 12, 1996, also known as the Puerto Rico Public Broadcasting Corporation Act ("Act").   See Laws of P.R. Ann., tit. 27 §§ 501-513 (West 2009).   The PRCPB operates on public funds, the provision of which is subject to approval by the Legislature and the Governor.   The Board exercises the powers, facilities, and duties of the PRCPB and determines its operational and administrative policies.   See id. § 503.   The Board is composed of eleven members:   three *ex officio* members[7] and eight citizen members who are appointed by the Governor with the advice and consent of the Senate.   Id.   Citizen members of the Board serve staggered, six-year terms.   Id.   The Board elects the Board's President and Vice-president, and designates a Corporate President, who serves at the will of the Board.   The members of the Board are not compensated, with the exception of those members who are not

---

[6] Federal Rule of Evidence 201 governs judicial notice of adjudicative facts.  A court is required to take judicial notice of facts when requested by a party and supplied with the necessary information. Fed.R.Evid. 201(d).  Pursuant to Rule 201(d), the Court takes judicial notice of certain public law.  See U.S. v. Bello, 194 F.3d 18, 24 (1st Cir. 1999) ("[T]he existence of independent and undisputed documentary evidence in the form of . . . public laws provided a sufficient basis for judicial notice under Rule 201(b)(2)").

[7] The three *ex officio* members of the Board are the Secretary of Education, the Executive Director of the Institute of Puerto Rican Culture, and the President of the University of Puerto Rico.  Id.

Civil No. 01-1202 (FAB)                                                    5

public sector employees, who are entitled to a *per diem* allowance
of fifty dollars ($50) for each attended meeting.  Id.  Under the
Act, non-*ex officio* citizen members of the Board shall only be
removed for "just cause."  Id.

     The Act provides that the PRCPB "shall have true operational
and functional autonomy" and declares autonomy to be "a necessary
element  to  develop  its  [the  PRCPB's]  facilities  and  offer
broadcasting  pursuant  to  established  legal  provisions  and
limitations and thus render an optimum public service."  Laws of
P.R. Ann., tit. 27 § 502.  The Act expressly prohibits any person
from  exercising  "pressure  or  undue  influence"  on  PRCPB
representatives, and charges the Board to "protect the credibility"
of the PRCPB and "prevent inappropriate interventions".  Id. § 507.
The PRCPB is granted all powers under the Act that are necessary
for it to carry out its purpose and function, including the power
to  "make  and  execute  agreements,  leases,  contracts  and  other
instruments that are necessary or pertinent."  Id. § 504.

     During all times relevant to Guzman's complaint, he was a
businessman,[8] a  journalist,  and  an  active  member  of  the  New
Progressive Party ("NPP") and the National Republican Committee of

---

[8] Guzman testified that for over 20 years, he has done "marketing and
feasability studies, construction and viability studies, development and
international development."  (Docket No. 44 at 14)

the Republican Party.[9]  At the time of his dismissal, Guzman wrote
a column for the San Juan <u>Star</u>.   On September 27, 2000, then
Governor Pedro Rossello (a member of the NPP), nominated Guzman for
a second term as non-*ex officio* member of the Board, due to expire
on September 12, 2005.[10]  The Senate of the Commonwealth of Puerto
Rico confirmed the nomination.   With one abstention, the Board
unanimously elected Guzman to the position of Board President on
December 7, 2000.

Prior to, but mainly during, the 2000 gubernatorial election
and during the first months of 2001 after the election, the San
Juan <u>Star</u> published eleven articles authored by Guzman in its
"Viewpoint" section.   In the articles, Guzman criticized,
politically and ideologically, the Popular Democratic Party, Puerto
Rico's status as a Commonwealth (rather than a state) of the United
States of America, the acts and omissions of the Governor, who was
at the time the Mayor of San Juan and the gubernatorial candidate
for the Popular Democratic Party, and other current events.

On January 3, 2001, one day after taking office, the Governor
issued Executive Order No. OE-2001-03 ("the Order") and copied the

---

[9] Guzman testified that he has been affiliated with the NPP and the
Republican Party for approximately thirty years, served as an unofficial
advisor to the White House during the last three Republican
administrations, has served as a witness at Congressional hearings on
matters relating to Puerto Rico, and has consulted as a political analyst
for a number of radio and television stations.  (Docket No. 44 at 15-16)

[10] Guzman commenced his first term as a non-*ex officio* member of the Board
in September 1994.

PRCPB.  The Order required, in pertinent part, that no contract be entered into or amended by agencies[11] of the Commonwealth without the prior written authorization of defendant Miranda.  (See Docket No. 59, Exhibit 2 ("No agency of the Commonwealth of Puerto Rico may execute professional consultant service agreements during the effective term of this Order, whether new contracts or amendments to existing contracts without the written authorization of the Chief of Staff.")).  The Order refers to the Government of Puerto Rico's "substantial budgetary deficit" and a need to "control . . . governmental resources."[12]  Id.

    After consulting with PRCPB counsel and the PRCPB Corporate President,[13] Guzman adopted the position that the Order did not apply to the PRCPB by virtue of the PRCPB's enabling statute and an opinion from Puerto Rico Department of Justice.[14]  By letter to the

---

[11] The Order broadly defines "agency" as including any "board, body, examiner's court, commission, independent office, public corporations, division, administration, business, department, authority, official, person, entity or any instrumentality of the Executive Branch of the Commonwealth of Puerto Rico, including the office of the Governor" but excludes the University of Puerto Rico.  (Docket No. 59, Exhibit 2)

[12] The Order makes reference to Section 7 of Art. VI of the Constitution of the Commonwealth of Puerto Rico, which provides: "The appropriations made for any fiscal year shall not exceed the total revenues, including available surplus, estimated for said fiscal year unless the imposition of taxes sufficient to cover said appropriations is provided by law."

[13] During the relevant time period, Mr. Luis Rullan served as counsel to the PRCPB and Mr. Jorge M. Inserni held the position of PRCPB Corporate President.

[14] In Opinion 1985-5, former Attorney General Hector Rivera-Cruz opined that the Governor of Puerto Rico could not, by executive order, appoint the Administrator (now Corporate President for the PRCPB) and define the scope of his or her duties.  (Docket Nos. 30 at 10 n.8)

Governor, dated January 24, 2001 (Docket No. 59, Exhibit No. 3),
Guzman presented a legal argument in support of the Order's
inapplicability to the PRCPB.  By letter dated February 1, 2001,
however, defendant Miranda requested strict compliance with the
Governor's Order, asserting that the PRCPB's limited operational
autonomy "cannot be interpreted as a provision of fiscal autonomy."
(See Docket No. 59, Exhibit 4)  In closing, Miranda opined that an
adequate remedy for the situation was for the Governor to select a
new Board.

    "Pursuant to what is stated, it is necessary to conclude that
the agreement adopted by the Board of the CPRDP [PRCPB] is contrary
to the public policy instituted, therefore [sic] it lacks the trust
of this administration.  The adequate remedy is that the Governor
is allowed to select a new Board which will govern the destinies of
the CPRDP [PRCPB] pursuant to her stated vision and public policy."
(Id.)

    By letter dated February 2, 2001, Guzman requested that
defendant Miranda clarify the Governor's position regarding the
Order's intended effect on PRCPB contracts.  (Docket No. 59,
Exhibit 5)  Guzman also inquired as to whether the February 1, 2001
letter constituted a request for the Board's resignation because
the Board refused to submit to the Order. (Id.)  By letter dated
February 5, 2001, defendant Miranda suggested that all debate on
the meaning of the Order be discontinued and reminded Guzman that

executive orders in Puerto Rico "entail a force and legal mandate applicable to executive agencies . . . not exempted from the same." (Docket No. 59, Exhibit 6)   After receiving Miranda's letter, Guzman called an emergency meeting of the Board's executive committee.   The meeting convened in the evening on February 5, 2001.[15]

At a news conference on February 6, 2001, Guzman announced that the position of the PRCPB was that the Order did not apply to it and that the Board intended to continue executing its contracts. Approximately fifteen to twenty minutes after the conclusion of the press conference, Guzman received a letter from Governor Calderon, dated the same day, dismissing him from his position as a non-*ex officio* member and President of the Board for "insubordination."[16] (Docket No. 59, Exhibit 7)   In her letter, the Governor states that in his capacity as a member of the Board, Guzman "participates in the direction and operation of the radio and television stations of the Commonwealth of Puerto Rico" and performs functions that are "purely executive" in nature."   (Id.)   A few days later, the

---

[15] Persons present at the meeting included members of the executive committee, Mr. Rafael A. Torrens, Dr. Loretta Phelps de Cordova, Ms. Adalisa Diaz, and plaintiff, and two other board members, Mr. Rolando Cruz and Mr. Francisco Reyes.   Mr. Cruz and Mr. Reyes were "visiting" and invited to join.   (See Docket No. 41)

[16] On February 5, 2001, Guzman informed the Governor's office of his intention to hold a news conference on the following day to announce the PRCPB's position regarding the Order's inapplicability.

Governor designated another person to plaintiff's position on the
Board.

## II.  Procedural Background

     Plaintiff filed his original complaint (Docket No. 1) on
February 16, 2001 and a Verified Amended Complaint (Docket No. 41)
on March 7, 2002.[17]  On August 2, 2002, defendants filed their
"Motion to Dismiss under R. 12(b)(6) and/or for Summary Judgment"
(Docket No. 59) and on November 5, 2002, plaintiff filed a cross-
motion for partial summary judgment (see Docket No. 68).  Both
parties timely filed responses in opposition.  (See Docket Nos. 62
& 69)  By order dated March 27, 2003, the Court denied defendants'
motion and plaintiff's cross-motion for statistical purposes only,
with provision for the automatic reinstatement of both motions upon
the issuance of a certification opinion from the Supreme Court of
Puerto Rico.  (Docket No. 71)  On July 31, 2003, pursuant to Rule
25(a) of the Rules of the Supreme Court of Puerto Rico, Laws of
P.R. Ann., tit. 4, App. XXI-A, the Court, through the Honorable
Judge Carmen C. Vargas de Cerezo, requested a writ of certification
from the Supreme Court of Puerto Rico for a determination on the
following issue raised by defendants:

     Is the requirement of termination based on just cause
     established by Act No. 216 of 1996, 27 L.P.R.A. §§ 501,
     et seq., for the non ex-officio members of the Board of

_____

[17] With leave of Court, plaintiff amended his complaint to include
allegations against defendants in their "official" capacities.  (See
Docket No. 30 at 15-16)

> Directors of the PRCPB unconstitutional under the
> Constitution of the Commonwealth due to its violation of
> the principle of separation of powers and Article IV,
> Section 4[18] of said Constitution?

(Docket No. 78)  In its request, the Court clearly delineated the

effect of possible answers to the issue certified.

> Should the Supreme Court conclude that the requirement
> for termination based on just cause established by Act
> No. 216 is unconstitutional under Article IV, Section 4
> of the Commonwealth's Constitution, plaintiff would lack
> a property interest in his position and would have no
> cause of action under the federal Due Process Clause.  If
> in reaching said conclusion, the Supreme Court also
> determines that the position held by plaintiff was that
> of an "executive officer" akin to a Cabinet position,
> then plaintiff would also have no cause of action under
> the First Amendment to the U.S. Constitution for holding
> a "policymaking" position.

(Id.)  The Supreme Court of Puerto Rico agreed to issue the

requested writ of certification.[19]  The parties timely filed their

briefs and the Solicitor General of Puerto Rico appeared as *amicus*

*curiae*.  (See Docket No. 117-2)

On March 23, 2005, the Supreme Court issued a *per curiam*

opinion concluding, *inter alia*, that the "just cause" requirement

for removal of a board member "does not impermissibly impede the

Governor's constitutional duty to execute the laws and cause them

---

[18] Art. IV, section 4, of the Constitution of the Commonwealth of Puerto
Rico empowers and obligates the Governor of Puerto Rico to execute and
enforce the laws and to appoint, in a manner prescribed by law, certain
officers of the Commonwealth.

[19] See Docket Nos. 73 & 76.  In its certification opinion, the Supreme
Court of Puerto Rico thoroughly reviews interjurisdictional certification
requirements.  See Docket No. 117-2 at 02-04.

to be executed" and "does not infringe on the Governor's
constitutional power to remove public officers." (Docket No. 117-2
at 12)  The Supreme Court's certification opinion is important
precedent for future consideration in analyzing the
constitutionality of legislatively imposed limitations on the
Governor's power to remove officers appointed by him or her. The
Court, therefore, takes this opportunity to elaborate on the
Supreme Court's decision.

The Supreme Court of Puerto Rico followed United States
Supreme Court precedent[20] in establishing the following rule:  in
the case of Puerto Rico government officers who perform quasi-
legislative or quasi-judicial functions, "any reasonable
restriction on the Governor's power of removal would be valid ——
unless, of course, it impedes the Governor's power to perform his
or her constitutional duties."  (Id. at 10)  Following this
juridical framework, the Supreme Court of Puerto Rico determined
that members of the Board perform both administrative and quasi-

---

[20] See Myers v. United States, 272 U.S. 52, 119 (1926) (concluding that
the power to remove executive officers was incident to the power of
appointment vested in the President by Article II, Section 2, of the
Constitution of the United States); Humphrey's Executor v. United States,
295 U.S. 602, 629 (1935) (concluding that the President's power of
removal may be restricted in the case of officers holding quasi-judicial
or quasi-legislative powers); Wiener v. United States, 357 U.S. 349
(1958) (upholding Humphrey's, supra); Morrison v. Olson, 487 U.S. 654,
689-91 (1988) ("[T]he real question is whether the removal restrictions
are of such a nature that they impede the President's ability to perform
his constitutional duty, and the functions of the officials in question
must be analyzed in that light.")

legislative functions[21] and as such, may be delegated "a higher degree of independence" by the Legislative Assembly. (Docket No. 117-2 at 11)  The Supreme Court noted that "a reasonable restriction on the Governor's power of removal would be in order." (Id.)  Then, the Supreme Court concluded that the "just cause" requirement in section 3 of the Act helps guarantee the independence and impartiality of the PRCPB and does not unconstitutionally interfere with the Governor's ability to fulfill his constitutional role.  (Docket No. 117-2 at 12)

> [S]ec.3 of the Puerto Rico Public Broadcasting Corporation Organic Act which requires "just cause" for removal of non-ex officio members of the Board of Directors, does not impermissibly impede the Governor's constitutional duty to execute the laws and cause them to be executed.  *Much to the contrary, the Governor retains the authority to remove officers who, instead of complying with the purpose of the law, have used their position to advance other interests or have breached their duties and obligations.*

(Id.)

Upon issuance of the certification opinions,[22] the Court reinstated the parties' motions (see Docket No. 127) and twice ordered defendants to refile their motion, making specific

---

[21] In determining the Board's function, the Supreme Court considered the Board's statutorily imposed duty to "approve, amend, and repeal whichever regulations it deems are necessary and convenient to carry out its ends, purposes and activities."  (Docket No. 117-2 at 11 (quoting 27 L.P.R.A. § 503).)

[22] Justice Rivera Perez issued a fifty-six page concurring opinion in which Justices Rebollo Lopez and Corrada del Rio joined.  Justice Fiol Matta concurred with Part II of the *Per Curiam* Opinion and dissented, without a written opinion, from Parts III, IV(A) and (B), and V(A) and (B).  Justice Rodriguez Rodriguez recused herself.

references to the Supreme Court's opinion.[23]   Defendants wholly
disregarded the Court's two orders.   The Court, therefore, must
resolve the pending motions in consideration of the Supreme Court's
certification opinion and the arguments that *predate* its issuance.
The Court notes with considerable frustration that much of the
argument presented is now outdated, irrelevant, or substantially
incomplete.   For the reasons set forth below, the Court **DENIES IN
PART AND GRANTS IN PART** defendants' motion for summary judgment and
**DENIES IN PART AND GRANTS IN PART** plaintiff's cross-motion for
partial summary judgment.

### III.   Standard of Review[24]

**A.   Motion for Summary Judgment**

The Court's discretion to grant summary judgment is governed
by Rule 56.   The Rule states, in pertinent part, that the Court may
grant summary judgment only if "the pleadings, depositions, answers
to interrogatories, and admissions on file, together with the
affidavits, if any, show that there is no genuine issue as to any

---

[23] (See Docket No. (order issued as unnumbered docket entry by Judge
Gustavo Gelpi on August 14, 2006 instructing defendants to refile their
motion no later than October 13, 2006) and Docket No. 139 (order issued
by Judge Francisco A. Besosa on December 26, 2006 instructing defendants
to refile their motion on or before January 12, 2007).)

[24] Defendants move for dismissal pursuant to Rule 12(b)(6) or, in the
alternative, summary judgment pursuant to Rule 56.   Defendants fail,
however, to frame their arguments "in the alternative."   In addition, it
is often unclear as to whether a particular argument is made in support
of dismissal or summary disposition.   The Court, therefore, reviews
defendants' arguments pursuant to the standard that the Court deems most
appropriate.

material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); see also Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000); Morales, et al. v. St. Luke's Episcopal Hospital, et al., 328 F.Supp.2d 192, 195-96 (D.P.R. 2004). The party moving for summary judgment bears the burden of showing the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

Once a properly supported motion for summary judgment has been presented, the opposing party has the burden of demonstrating that a trial-worthy issue exists that would warrant the court's denial of the motion for summary judgment. See Santiago-Ramos, 217 F.3d at 52. For issues where the opposing party bears the ultimate burden of proof, that party cannot merely rely on the absence of competent evidence, but must affirmatively point to specific facts that demonstrate the existence of an authentic dispute. See Suarez v. Pueblo Int'l, Inc., 229 F.3d 49 (1st Cir. 2000); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

In order for a factual controversy to prevent summary judgment, the contested facts must be "material" and the dispute must be "genuine". Fed.R.Civ.P. 56(c); Anderson, 477 U.S. at 248. "Material" means that a contested fact has the potential to change the outcome of the suit under governing law. See Anderson, 477 U.S. at 248. The issue is "genuine" when a reasonable jury could

return a verdict for the nonmoving party based on the evidence. Id. It is well settled that "the mere existence of a scintilla of evidence" is insufficient to defeat a properly supported motion for summary judgment. Id. at 251. It is therefore necessary that "a party opposing summary judgment must present definite, competent evidence to rebut the motion." Maldonado-Denis v. Castillo-Rodriquez, 23 F.3d 576, 581 (1st Cir. 1994).

In making this assessment, the court "must view the entire record in the light most hospitable to the party opposing summary judgment, indulging in all reasonable inferences in that party's favor." Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990). The court may safely ignore, however, "conclusory allegations, improbable inferences, and unsupported speculation." Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990).

**B.   Motion to Dismiss**[25]

Pursuant to Rule 12(b)(6), a complaint should be dismissed where a plaintiff does not "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570

---

[25] Citing Hartford Fire Ins. Co. v. California, 550 U.S. 764 (1993), both parties assert, in error, that dismissal is proper only where a plaintiff "can prove no set of facts which could entitle him to relief." (Docket Nos. 59 at 3; 62 at 2) The Court recognizes that the parties filed their pleadings prior to Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007), but neither party sought leave to amend. The Court, therefore, feels compelled to remind the parties that Bell Atl. Corp. abrogated the "no set of facts" standard supported by Hartford Fire Ins. Co. See Cacho-Torres v. Miranda-Lopez, 2009 WL 1034873, *2 n.1 (D.P.R. 2009) (explaining the basis for the abrogation).

(2007)).  A claim is plausible on its face if it "raises a right to
relief above the speculative level," Bell Atl. Corp., 550 U.S.
at 570, by pleading enough factual content that allows the court to
draw the reasonable inference that the defendant is liable for the
misconduct alleged," Ashcroft, 129 S.Ct. at 1949.  The Court will
accept all well-pleaded factual allegations in the complaint as
true and draw all reasonable inferences in plaintiff's favor.  Id.;
see also Correa-Martinez v. Arrillaga-Belendez, 903 F.2d 49, 51
(1st Cir. 1990).  The Court need not credit, however, "bald
assertions [and] unsupportable conclusions" when evaluating the
complaint's allegations, Aulson v. Blanchard, 83 F.3d 1, 3 (1st
Cir. 1996), nor "accept as true a legal conclusion couched as a
factual allegation," Bell Atl. Corp., 550 U.S. at 570 (quoting
Papasan v. Allain, 478 U.S. 265, 286 (1986)).

### IV.  Defendants' Motion and Plaintiff's Cross-motion

### A.  Plaintiff's Claims of First Amendment Violations

Defendants present three arguments in support of their motion
respecting plaintiff's First Amendment claims.  First, defendants
argue that summary judgment on plaintiff's political discrimination
and retaliatory discharge claims is warranted because plaintiff
held a position for which "party affiliation is an appropriate
requirement for effective performance of the public office."
Branti v. Finkel, 445 U.S. 507, 518 (1980).  Second, defendants
argue that plaintiff's political discrimination claim fails under

<u>Mt. Healthy City Board of Ed. v. Doyle</u> because plaintiff cannot
show that he engaged in constitutionally protected conduct and that
the conduct was a substantial or motivating factor behind his
dismissal.  429 U.S. 274, 287 (1977).  Third, defendants argue that
plaintiff's prior restraint claim has no merit because the Order is
unrelated to any form of expression.  Plaintiff cross-moved for
partial summary judgment on all claims brought for alleged First
Amendment violations.

     **1.**    **Plaintiff's Political Discrimination Claim and the _Elrod-_**
                **_Branti_ Exception.**

     More than a quarter century ago, the Supreme Court
declared the practice of patronage dismissals to be
unconstitutional under the First and Fourteenth Amendments.  <u>See</u>
<u>Elrod</u>, 427 U.S. 347, 373 (1976).  This rule, however, is not
absolute.  Under what has come to be known as the <u>Elrod-Branti</u>
exception, political affiliation is an acceptable requirement of
public employment for certain "policymaking" or "confidential"
positions, where an "employee's private political beliefs would
interfere with the discharge of his public duties."  <u>Branti</u>, 445
U.S. at 517; <u>see</u> <u>Rutan v. Republican Party of Illinois</u>, 497 U.S.
62, 75 (1990); <u>Figueroa-Serrano v. Ramos-Alverio</u>, 221 F.3d 1, 7
(1st Cir. 2000).  The ultimate inquiry, however, is not whether a
particular position can be categorized as a "policymaking" or
"confidential" position; rather, it is "whether the hiring
authority can demonstrate that party affiliation is an appropriate

requirement for the effective performance of the public office involved." Branti, 445 U.S. at 518.

        In Jimenez Fuentes v. Torres Gaztambide, 807 F.2d 236 (1st Cir. 1986), the First Circuit Court of Appeals developed a two-part inquiry for lower courts to apply in deciding whether a position should be excepted from First Amendment protection under Elrod and Branti.  The first part requires an assessment of "whether the position at issue, no matter how policy-influencing or confidential it may be, relates to 'partisan political interests [or] concerns.'" Jimenez-Fuentes, 807 F.2d at 241 (quoting Branti, 445 U.S. at 519).  If the first part of the inquiry is satisfied, then the second part requires an examination of the "particular responsibilities of the position to determine whether it resembles that of a policymaker, a privy to confidential information, a communicator, or some other office holder whose function is such that party affiliation is an equally appropriate requirement." Jimenez-Fuentes, 807 F.2d at 242.  In examining the responsibilities of a particular position, the focus is on the powers inherent to the particular office at issue, not the actual past duties of a person holding the position.  Id.

        Invoking the Elrod-Branti exception and the two-part test of Jimenez-Fuentes, defendants contend that the members of the Board may properly be dismissed for their political affiliation because they are "high executive officials that [sic] participate

in the formulation and/or implementation of governmental public policy." (Docket No. 59 at 10)  In response, plaintiff argues that political affiliation is not an appropriate requirement for a board member position because the Act intended the PRCPB and its Board to be free from partisan influences.  Having reviewed the Act in considerable detail, The Court agrees with plaintiff.

There is absolutely no indication in the Act that political affiliation would be an appropriate requirement for the effective performance of a non-*ex officio* board member.  In fact, the Court gleans from the Act's provisions that the effective performance of a board member hinges on the member's ability to act outside and in despite of his or her own political leanings.  Also, the Act does not support a determination that the position of non-*ex officio* board member "relate[s] to political partisan interests."  To the contrary, the Act is clearly crafted to keep those interests at bay.

The Court reviews the relevant provisions of the Act. Section 502 prohibits the use of PRCPB facilities for *political-partisan* purposes and directs board members to ensure that *partisan interests do not interfere* with the provision of public programming.  Id. § 502.  The Act requires that programming be "governed by . . . objectivity and balance in all that could be controversial in nature."  Id.  The Legislature's intent to preserve the PRCPB's "operational and functional autonomy" is

apparent.  Id.  Section 507 prohibits any person from exercising pressure or undue influence on the Board and charges the Board to "protect the credibility" of the PRCPB and "prevent inappropriate interventions."  Laws of P.R. Ann., tit. 27 § 507.

Defendants submit that the Board is in a position to assist in the creation of public policy through the provision of programming in the areas of education, sports, the arts, music, and culture.  (See Docket No. 59 at 13)  It is true that the PRCPB provides programming on matters of public policy, see Laws of P.R. Ann., tit. 27 § 502, but the Act does not position the Board to assist in the *creation* of that policy.  The PRCPB and its Board are merely empowered to *disseminate* information on matters of public policy in an objective and balanced fashion.  See id.  At least three Justices of the Supreme Court of Puerto Rico appear to agree:

> Although said officers are under the "supervision and inspection" power of the Governor of Puerto Rico, they have no say whatever [sic] in the formulation of public policy on education and culture or on any other area essential and fundamental to the discharge and performance of the Governor's constitutional role.  Their function is to allow and facilitate the public broadcast of the diversity of opinions or views that exist on those topics, independently from the Government of Puerto Rico.[26]

---

[26] The Court recognizes that the issue certified to the Supreme Court of Puerto Rico was not whether a non-*ex officio* board member position is excepted from First Amendment protection under Elrod and Branti. Relevant to the Elrod-Branti inquiry, however, is Justice Rebollo Lopez's analysis of the Board's function, made for the purpose of determining the constitutionality of the Act's "just cause" requirement.

Civil No. 01-1202 (FAB)                                          22

(Docket 124-1 at 54 (concurring opinion of Justice Rivera-Perez,
with whom Justice Rebollo-Lopez and Justice Corrada-del Rio
joined).)  For the reasons set forth above, and pursuant to Elrod,
Branti, and Jimenez-Fuentes, the Court concludes that non-*ex
officio* members of the Board are protected under the First
Amendment from dismissal due to political affiliation.  The Elrod-
Branti exception does not apply here.

   **2.   Plaintiff's Political Retaliation Claim and the Elrod-
         Branti Exception**

         Plaintiff's political retaliation claim is based on an
allegation that the Governor dismissed plaintiff in retaliation for
his politically-charged newspaper articles.  (See Docket 41, ¶¶ 31,
32)   Defendants argue, again under Elrod and Branti, that
plaintiff's expression is not entitled to protection under the
First Amendment because plaintiff's position is a "high-level,
policy-making position of confidence."  (Docket No. 59 at 16)

         The Elrod-Branti exception should be considered where a
plaintiff alleges discharge due to his or her political activity,
as well as his or her political affiliation.  See Rodriguez
Rodriguez v. Muñoz Muñoz, 808 F.2d 138, 144 (1st Cir. 1986).[27]  As
already determined, however, the position of non-*ex officio* board

_____

[27] The Court limited its decision in Rodriguez Rodriguez to "partisan
political activity" involving "activity or expressive conduct related to
contests for elective office."  808 F.2d at 144 n.5.

Civil No. 01-1202 (FAB)                                        23

member is not a "high-level, policy-making position of confidence"
subject to the Elrod-Branti exception.

3.    **Plaintiff's Political Discrimination Claim and the Mt.
          Healthy Standard**

        Defendants contend that even if plaintiff's position as
President and non-*ex officio* member of the PRCPB Board is not
excepted from First Amendment protection under Elrod and Branti,
which the Court holds that it is not, plaintiff's political
discharge claim still fails under Mt. Healthy.   Mt. Healthy
established a two-part burden-shifting analysis for the evaluation
of free speech claims, which is also applied in the political
discrimination context.   429 U.S. at 287; see Padilla-Garcia v.
Guillermo Rodriguez, 212 F.3d 69, 74 (1st Cir. 2000); Rodriguez-
Rios v. Cordero, 138 F.3d 22, 24 (1st Cir. 1998); Acevedo-Diaz v.
Aponte, 1 F.3d 62, 67 (1st Cir. 1993).   A plaintiff alleging
political discrimination bears the threshold burden of producing
sufficient evidence, whether direct or circumstantial, see
Rodriguez-Rios, 138 F.3d at 24, that he or she engaged in
constitutionally protected conduct and the conduct was a
substantial or motivating factor in the adverse employment
decision.   See Mt. Healthy, 429 U.S. at 287; Padilla-Garcia, 212
F.3d at 74; Figueroa-Serrano v. Ramos-Alverio, 221 F.3d 1, 7 (1st
Cir. 2000); Rodriguez-Rios, 138 F.3d at 24; Acevedo-Diaz, 1 F.3d at
67.   To discharge this burden, a plaintiff must point to evidence
in the record that would "permit a rational factfinder to conclude

that the challenged personnel action occurred and stemmed from a politically-based discriminatory animus." Rivera-Cotto v. Rivera, 38 F.3d 611, 614 (1st Cir. 1994); see Rodriguez-Rios, 138 F.3d at 24; Vazquez v. Lopez Rosario, 134 F.3d 28, 36 (1st Cir. 1998).

        To establish a *prima facie* case, a plaintiff must plead and prove that (1) plaintiff(s) and defendant(s) belong to opposing political affiliations; (2) the defendant(s) had knowledge of the plaintiffs' affiliation; (3) a challenged employment action occurred; and (4) political affiliation was a substantial or motivating factor behind the challenged employment action. See Martinez-Velez v. Rey-Hernandez, 506 F.3d 32, 39 (1st Cir. 2007); Pequero-Moronta v. Santiago, 464 F.3d 29, 48 (1st Cir. 2006). A nonmoving party's unsupported and speculative assertions of unfair treatment by persons from a rival political party will not survive summary disposition. See, e.g., Gonzalez-Blasini v. Family Dept., 377 F.3d 81, 85-86 (1st Cir. 2004); Cosme-Rosado v. Serrano-Rodriguez, 360 F.3d 42, 47-48 (1st Cir. 2004); Vazquez, 134 F.3d at 36; Rivera-Cotto, 38 F.3d 611, 614 (1st Cir. 1994); Cf., Acosta-Orozco, 132 F.3d 97, 101-02 (1st Cir. 1997). That said, evidence of "'[a] highly charged political atmosphere . . ., coupled with the fact that plaintiffs and defendants are of competing political persuasions, may be probative of discriminatory animus,'" especially where plaintiff is a conspicuous target for political discrimination. Rodriguez-Rios, 138 F.3d at 24 (quoting Acevedo-

Diaz, 1 F.3d at 69)); see Padilla-Garcia, 212 F.3d at 75-76.  Mere
temporal proximity between an adverse employment action and a
change of administration is, alone, insufficient to establish
discriminatory animus, see Acevedo-Diaz, 1 F.3d at 69, but it may
be suggestive of a it, see Anthony v. Sundlon, 952 F.2d 603, 606
(1st Cir. 1991).

        Once a plaintiff discharges his or her initial burden
under Mt. Healthy, a defendant may still escape liability by
establishing that the defendant  would have taken the same action
regardless of the plaintiff's political beliefs.  See Padilla-
Garcia, 212 F.3d at 74; Rodriguez-Rios v. Cordero, 138 F.3d at 24;
Acevedo-Diaz v. Aponte, 1 F.3d at 67.  Any non-discriminatory
reason proffered by a defendant may be discredited through
circumstantial or direct evidence indicating that political
discrimination was more likely than not a motivating factor behind
the discharge. See Padilla-Garcia, 212 F.3d at 77; Rodriguez-Rios,
138 F.3d at 26; Acevedo-Diaz, 1 F.3d at 69.

        Defendants contend that plaintiff cannot meet his initial
evidentiary burden under Mt. Healthy.  Citing Figueroa-Serrano and
Kauffman v. Puerto Rico Telephone Company, 841 F.2d 1169 (1st Cir.
1988), defendants argue that defendants' PDP affiliation and the
fact that the Governor discharged plaintiff shortly after taking
office do not establish a politically based discriminatory animus.
(Docket No. 59 at 15)   In response, plaintiff puts forth the

following facts to "clearly establish that political discrimination
was a substantial factor, or at least a motivating factor in the
dismissal" (Docket No. 62 at 8):  (1) the nomination of plaintiff
to his Board position by NPP Governor Pedro Rossello (see Docket
No. 41, ¶ 13); (2) plaintiff's membership in the NPP and Republican
Party (see Docket No. 41, ¶ 7); (3) plaintiff's status as a critic
of the PDP and the acts and omissions of the Governor when she was
the Mayor of San Juan (see Docket No. 41, ¶ 32); (4) the Governor's
"publicly expressed . . . will to rid governmental boards of
members of the New Progressive Party;" (see Docket No. 62 at 9);
and (5) actions taken by Secretary of State-designate, Ferdinand
Mercado ("Mercado"), and defendant Miranda in seeking the Board's
resignation (see Docket No. 41, ¶¶ 21, 25); and (6) the removal of
plaintiff from his position despite plaintiff's January 24, 2001
letter explaining the legal grounds for the Board's position (see
Docket No. 41, ¶¶ 23, 24, 30).

        Plaintiff's authority is persuasive, but not completely
dispositive.  In Figueroa-Serrano and Kauffman the First Circuit
Court of Appeals affirmed summary judgment for defendants on
political discrimination claims because plaintiffs failed to
produce sufficient evidence of a politically-based discriminatory
animus.  In Figueroa-Serrano, the First Circuit Court of Appeals
noted plaintiffs' failure to demonstrate that they were replaced in
their positions with persons from the same political party as

defendants.  Similarly, in Kauffman, the First Circuit Court of Appeals noted plaintiffs' failure to show that similarly situated employees from the same political party as defendants were retained.  Figueroa-Serrano, 221 F.3d at 7; Kauffman, 841 F.2d at 1169.  Indeed, plaintiff would be substantially closer to establishing his *prima facie* case of political discrimination if he could demonstrate that his successor was affiliated with the PDP. This is not the only hole in plaintiff's case.  Although unopposed, plaintiff's more persuasive allegations lack evidentiary support. Plaintiff alleges that during late December or January 2001, he "was *made aware* that Governor Calderon had very publicly expressed her will to rid governmental boards . . . of members of the New Progressive Party and/or pro-statehood sympathizers."  (Docket No. 41, ¶ 21 (emphasis supplied))  This alleged fact is inadmissable hearsay to the extent plaintiff offers it for the purpose of establishing that the Governor in fact made such a statement.  Also, plaintiff alleges that in early to mid-January, the PRCPB Corporate President informed him that Secretary of State-designate Mercado visited, seeking the Board's resignation.  (Id.) Plaintiff further alleges that on February 1, 2001, the PRCPB Corporate President informed him that defendant Miranda called seeking the Board's resignation.  (See Docket No. 41, ¶ 25)  The PRCPB Corporate President's alleged remarks concerning statements made by Miranda and Mercado constitute inadmissable hearsay and

hence, must be disregarded.[28]  The remainder of plaintiff's well-
supported facts are insufficiently probative of a discriminatory
animus to support the entry of summary judgment in plaintiff's
favor.  Notwithstanding, the Court finds under the same well-
supported facts an issue sufficient to forestall the entry of
summary judgment in defendants' favor.  In making this
determination, the Court considers plaintiff's NPP affiliation,
defendants' prominent status as members of the PDP, the temporal
proximity of plaintiff's discharge to the Governor taking of
office, defendant Miranda's February 1, 2001 letter to plaintiff,
and the Governor's February 6, 2001 letter of dismissal.

        Defendants' correspondence gives the impression that
defendants viewed plaintiff's position as one of trust, a policy-
making position for which political affiliation was an appropriate
requirement.  Defendants' correspondence to plaintiff is replete
with references to the "public policy", "trust", and the "executive

---

[28] The alleged statements by Mercado and Miranda may be exempt from the
hearsay rule under Federal Rule of Evidence 801(d)(2)(A) and (C).  But,
each link in a chain of statements must be admissible.  Plaintiff has no
personal knowledge of statements purportedly made by Mercado and Miranda
and failed to procure the affidavit of the person with that knowledge,
the PRCPB Corporate President.

nature" of plaintiff's position.[29]   Moreover, defendants offer
merely a token response to plaintiff's January 24, 2001 letter
outlining the legal basis for the PRCPB's position.  (See Docket
No. 59, Exhibit 4 ("[T]he operational autonomy . . . cannot be
interpreted as a provision of fiscal autonomy.")).  If defendants'
position at the time was that plaintiff's position was an
executive-level position, then plaintiff's political affiliation
may have motivated his dismissal.  Defendants do offer, however, a
possible non-discriminatory basis for plaintiff's dismissal.
Defendants' argue that plaintiff's "insubordination" or rather, his
refusal to comply with the Order, was the basis for his removal.
Without more information, the Court does not accept an alleged
"insubordination" as a non-discriminatory basis for plaintiff's
removal.  A determination that plaintiff was "insubordinate" may
have been influenced by his political affiliation.  If defendants
thoughtfully considered whether plaintiff was under a legal
obligation to comply with the Governor's Order prior to his
dismissal, then it is unlikely that defendants' actions infringed
on plaintiff's First Amendment freedom.  If defendants considered

---

[29] In his February 1, 2001 letter, Mr. Miranda writes "it is necessary to
conclude that the agreement adopted by the Board . . . is contrary to the
public policy instituted, therefore it lacks the trust of this
administration.  The adequate remedy is that the Governor is allowed to
select a new Board which will govern the destinies of the CPRDP [PRCPB]
pursuant to her stated vision and public policy."  In her February 6,
2001 letter of dismissal, the Governor informs plaintiff that his
position "entails contributing to the formulation and implementation of
public policy of my Administration."  The Governor refers to plaintiff's
functions as "purely executive in nature."

plaintiff's position, determined it to be an executive level,
policy-making position, terminable at the will of the Governor,
then it is more likely that plaintiff's political affiliation
motivated his dismissal.  It is impossible to determine defendants'
methods on this record.  The Court leaves this issue for resolution
by a jury who is better positioned to judge the credibility of
defendants' testimony.  Accordingly, the Court **DENIES** defendants'
motion for summary judgment on plaintiff's political discrimination
claim and **DENIES** plaintiff's motion for summary judgment on the
same issue.

> **4.   Plaintiff's Political Retaliation Claim and the Mt.
>         Healthy Standard**

Mt. Healthy's two-part burden-shifting analysis also
applies in the context of plaintiff's political retaliation claims.
Plaintiff offers insufficient evidence to withstand summary
judgment on his political retaliation claim.   Not one of
plaintiff's eleven newspaper articles has been submitted for the
Court's review.   The Court cannot even begin to consider the
possibility that plaintiff's editorial expression motivated his
dismissal. Accordingly, defendants' motion for summary judgment on
plaintiff's political retaliation claim is **GRANTED** and plaintiff's
cross motion for partial summary judgment on the same issue is
**DENIED.**

### 5.   Plaintiff's Prior Restraint Claim

Defendants move for summary judgment on plaintiff's prior restraint claim, arguing that the Order does not inhibit any form of expression.   In response, plaintiff argues that the Order constitutes a prior restraint because it inhibits the PRCPB's ability to contract for services essential to the provision of public broadcasting, which is protected speech.  (See Docket No. 62 at 13-14)  Plaintiff's argument is legally flawed for the reasons stated below.

It is well established that government may impose restrictions on the time, place, or manner of protected speech in public forums, provided that such restrictions "are justified without reference to the content of the regulated speech, that they are narrowly tailored to serve a significant governmental interest, and that they leave open ample alternative channels for communication of the information." Ward v. Rock Against Racism, 491 U.S. 781, 791 (1989) (quoting Clark v. Community for Creative Non-Violence, 468 U.S. 288, 293 (1984)); see Hill v. Colorado 530 U.S. 703, 703-05 (2000).  As a preliminary matter, the Court holds that the PRCPB is a public forum for expression on matters of public interest in which government restrictions on public expression are subject to First Amendment protection.  The Order, however, does not restrict public speech in that forum.  The Order imposes no time, place, or manner restrictions whatsoever on PRCPB

programming.   The Order restricts the ability of Commonwealth
agencies to execute or amend contracts for services absent written
authorization from the Governor's Chief of Staff.

        Plaintiff rests his argument on <u>Alexander v. United
States</u>, authority which actually supports defendants' position.
509 U.S. 544 (1993).  In <u>Alexander</u>, the Supreme Court determined
that a RICO forfeiture order did not constitute a prior restraint
because it did not forbid future expressive activities and did not
require "prior approval for any expressive activities."  509 U.S.
544, 550-51.  Like the RICO order in <u>Alexander</u>, the Order here also
does not require prior approval for *expressive activities*.   It
requires prior approval for *contracting activities*.

        Plaintiff suggests that defendants sought to control the
content of public programming by establishing veto authority over
PRCPB contracts.    Plaintiff raises a legitimate concern.
Censorship of the public airways might be accomplished through
control of enabling resources.  Still, the Court will not strike
down an Order as violating the First Amendment on the basis of an
"alleged illicit motive."  <u>Erie v. Pap's A.M.</u>, 529 U.S. 277, 292
(citing <u>United States v. O'Brien</u>, 391 U.S. 367, 382-83 (1968)).
The Order is constitutional on its face.  If there were any
evidence before the Court that defendant Miranda actually attempted
to censor public programming in carrying out his duties pursuant to
the Order, the Court might decide this issue differently.  There is

no such evidence.  Accordingly, defendants' motion for summary judgment on plaintiff's prior restraint claim is **GRANTED** and plaintiff's cross motion for partial summary judgment on the same issue is **DENIED**.

**B.   Plaintiff's Due Process Claims**

**1.   Plaintiff's Procedural Due Process Claims**

a.   *Deprivation of Property*

Defendants move for summary judgment on plaintiff's procedural due process claim based on deprivation of property, arguing that a non-*ex officio* member of the Board holds no property interest in his or her position.  Plaintiff filed a cross-motion for summary judgment on the same issue, taking the position that he is entitled to summary judgment because defendants deprived him of his property interest in a Board position without due process of law.

The due process clause of the Fourteenth Amendment prohibits the deprivation of life, liberty or property without fair procedure.  <u>See</u> <u>Zinermon v. Burch</u>, 494 U.S. 113, 125 (1990).  There are two components in a procedural due process analysis.  The first component inquires as to whether a state (or Commonwealth) has interfered with a life, liberty or property interest; the second requires a determination as to whether the procedures that accompanied the alleged deprivation were constitutionally

sufficient.  See Ky. Dept't of Corr. v. Thompson, 490 U.S. 454, 460
(1989) (citations omitted).

        "In order to establish a constitutionally-protected
property interest, a plaintiff must demonstrate that [she] has a
legally recognized expectation that [she] will retain [her]
position." Gonzalez-Blasini, 377 F.3d at 86 (quoting Santana v.
Calderon 342 F.3d 18, 24 (1st Cir. 2003)).  Plaintiff's expectation
of continued employment is governed by the Act and the Governor's
general power of removal.[30]  Puerto Rico statute empowers the
Governor to remove public officials appointed by him or her
provided that the office is declared vacant and filled "in the
manner provided by law."  Laws of P.R. Ann., tit. 3, § 6 (2009).
The phrase "in the manner provided by law," recognizes that the
legislature may impose limitations on the Governor's general power
of removal.  Santana v. Calderon, 342 F.3d 18, 25 (1st Cir. 2003).
A public official's interest in continued employment may be created
and defined "by existing rules or understandings that stem from an
independent source such as state law."  Board of Regents v. Roth,
408 U.S. 564, 577 (1972); see Cleveland Bd. of Educ. v. Loudermill,
470 U.S. 532, 541 (1985) (citing Board of Regents, 408 U.S. 564,
577 (1972)); Figueroa-Serrano v. Ramos-Alverio, 221 F.3d 1, 6 (1st

---

[30] The Governor's power of removal is implicit in Article IV, § 4 of the
Constitution of Puerto Rico.  Santana, 342 F.3d at 25-26; Quiles
Rodriguez v. Calderon, 172 F.Supp.2d at 334, 342  (D.P.R. 2001) (citing
Opinion of the Attorney General No. 3 of 1995 and No. 25 of 1967).

Cir. 2000); Bishop v. Wood, 426 U.S. 341, 344 (1976). Ordinarily, public employees who can only be removed from their position for "cause" under the law have a constitutionally protected property interest, while those who are removable at the will of their employer do not. See Perkins v. Board of Directors, 686 F.2d 49, 51 (1st Cir. 1982); Bleeker v. Dukakis, 665 F.2d 401, 403 (1st Cir. 1981); Ventetuolo v. Burke, 596 F.3d 476, 481 (1st Cir. 2000).

With respect to deprivations of public employment, the due process clause guarantees public employees who possess a property interest in continued employment the right to notice and a hearing prior to the termination of their employment. Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542-44 (1985); Gonzalez-Blasini, 377 F.3d at 86; Kauffman, 841 F.2d at 1173. The pretermination hearing, "should be an initial check against mistaken decisions – essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action." Cleveland Bd. of Educ., 470 U.S. at 545-46; see, e.g., Chmielinski v. Commonwealth of Mass. Office of the Comm. of Probation, 513 F.3d 309, 316 (1st Cir. 2008); Cepero-Rivera v. Fagundo, 414 F.3d 124, 134 (1st Cir. 2005); O'Neill v. Baker, 210 F.3d 41, 48 (1st Cir. 2000). In Matthews v. Eldridge, the Supreme Court set forth three "competing factors" to be weighed in determining the sufficiency of procedural safeguards attending deprivations caused by the

government: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail." 424 U.S. 319, 335 (1976).

        Defendants contend that board members have no property interest in their position because it is an uncompensated, honorary position that is "purely executive" in nature, and terminable at the will of the Governor. Defendants request that the Court disregard section 503 of the Act, which guarantees citizen board members a fixed term and removal for "just cause." Defendants contend that these two requirements violate the separation of powers doctrine. As already noted, the Supreme Court of Puerto Rico disagreed with defendants' position regarding section 503 and upheld the constitutionality of the "just cause" requirement. We are bound by the Supreme Court of Puerto Rico's decision and thus, are not in a position simply to disregard the Act's provisions. See Pan Ame. Comp. Corp. v. Data G. Corp., 112 D.P.R. 780, 784-85 [12 P.R. Offic. Trans. 983, 989-90] (1982).

        Regarding plaintiff's alleged property interest, the Court finds that plaintiff has a legitimate claim of entitlement to

his board member position for a fixed term absent "just cause" for his removal.  <u>See</u> <i>supra</i> <u>Perkins</u>, <u>Bleeker</u>, and <u>Ventetuolo</u>.  The Court does not find plaintiff's rate of compensation or rather, lack thereof, a sufficient basis upon which to deny him a right that is expressly guaranteed to him under Commonwealth law.  <u>See</u> <u>Thorton v. Barnes</u>, 890 F.2d 1380, 1388 n.9 (7th Cir. 1989) ("despite the lack of remuneration, state law gives the incumbents the right to remain in office.").  The Court now turns to the issue of whether plaintiff received adequate process prior to his termination.

The Court needs not delve too far into the issue of "due process" as there is little evidence in the record that plaintiff's received much process at all.  By letter dated February 6, 2001, plaintiff received notice of his dismissal, effective immediately.  The letter stated an ill-defined basis for his dismissal — "insubordination."  At no time did defendants afford plaintiff a meaningful opportunity to challenge the alleged "insubordination."  Accordingly, the Court **DENIES** defendants' motion for summary judgment on plaintiff's due process claim based on deprivation of property interest and **GRANTS** plaintiff's cross-motion on the same issue.

     b.     *Deprivation of Liberty Interest*

Defendants move for dismissal arguing that plaintiff cannot state a claim for deprivation of liberty interest in his

reputation absent an alleged defamatory act by defendants.  The Fourteenth Amendment's procedural protection of liberty interests includes a right to be free from stigma to one's reputation associated with false charges.

> Although neither the termination of employment nor statements that might be characterized as defamatory are, by themselves, sufficient to implicate the liberty interest, where a public-sector employer creates and disseminates a false and defamatory impression about an employee in connection with the employee's discharge, the Due Process Clause require[s] the employer to provide the employee with an opportunity to dispute the defamatory allegations, and the employer's failure to do so is actionable under § 1983.

Burton v. Town of Littleton, 426 F.3d 9, 15 (1st Cir. 2005); see Santana v. Calderon, 2009 WL 890490 (quoting Burton).  To state a claim for deprivation of liberty interest without due process, plaintiff must allege five elements:  (1) charges or statements made by defendants that might seriously damage plaintiff's standing and associations in the community and place his name, reputation, honor, or integrity at risk;[31] (2) the falseness of such charges or statements; and (3) the intentional publication of such charges or statements "in a formal setting (and not merely the result of unauthorized 'leaks')"; (4) charges or statements made in association with a change in the employee's legal status, such as

---

[31] As noted by the Supreme Court on numerous occasions, "where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential." Roth, 408 U.S. at 573; Wisconsin v. Constantineau, 400 U.S. 433; Wieman v. Updegraff, 344 U.S. 183, 191; Joint Anti-Facist Refugee Committee v. McGrath, 341 U.S. 123; United States v. Lovett, 328 U.S. 303, 316-17.

the loss of employment; and (5) a failure by defendants to comply

with plaintiff's request for an opportunity to clear his name.

Burton, 426 F.3d at 15 (citing Wojcik v. Mass. State Lottery Com'n,

300 F.3d 92, 103 (1st Cir. 2002)).

          With respect to the first element, plaintiff alleges

that defendants dismissed him for "insubordination" and that this

action damaged his reputation and caused him humiliation and

embarrassment.  (See Docket No. 41 ¶¶ 30, 38).  With respect to the

second   element,   plaintiff   alleges   that   the   alleged

"insubordination" was a "subterfuge or excuse".   This allegation

might reasonably be construed as an allegation that the charge of

"insubordination" is false.   With respect to the third element,

plaintiff fails to allege that defendants communicated the basis

for plaintiff's dismissal to anyone but plaintiff.  With respect to

the fourth element, plaintiff alleges that defendants terminated

his employment on the charge of "insubordination."  With respect to

the fifth element, plaintiff fails to allege that he requested an

opportunity to challenge the charge against him.  Having failed to

allege two of the five requisite elements adequately, the Court

finds that plaintiff fails to state a claim for deprivation of

liberty  interest  in  his  reputation  without  due  process.

Accordingly,  the  Court  **GRANTS**  defendants'  motion  to  dismiss

plaintiff's due process claim based on deprivation of liberty.

          The Court does find that plaintiff states a due
process claim for deprivation of his liberty interest in freedom of
association and expression.   Plaintiff avers that the alleged
"insubordination" was merely a pretext for his discharge, and that
the real purpose was to punish plaintiff for writing his newspaper
articles and for being an active member of the NPP.   (Docket
No. 41, ¶¶ 31 and 33)   The Court gathers that defendants would
agree, as they do not move for dismissal of plaintiff's due process
claim based on these two protected liberty interests.

    **2.    Plaintiff's Substantive Due Process Claim**

          Defendants move for dismissal of plaintiff's substantive
due process claim, arguing that plaintiff cannot assert a
substantive due process claim when he has a more explicit source of
protection under the First Amendment.   In response, plaintiff
describes defendants' legal argument as "preposterous." Defendants
are correct, albeit shrill in the use of the word "preposterous."
"Where a particular Amendment 'provides an explicit textual source
of constitutional protection' against a particular sort of
government behavior, 'that Amendment, not the more generalized
notion of 'substantive due process,' must be the guide for
analyzing these claims.'" Albright v. Oliver, 510 U.S. 266, 271
(1994) (quoting Graham v. Connor, 490 U.S. 386, 394 (1989)); see
Conn v. Gabbert, 526 U.S. 286, 293 (1999); Pagan v. Calderon, 448
F.3d 16, 33 ("It is the First Amendment, not the Fourteenth

Amendment [substantive due process], that guards individuals
against state-sponsored acts of political discrimination or
retaliation."). The Framers drafted the First Amendment to protect
persons against government interference with the fundamental
freedoms of speech and association. Plaintiff seeks relief
pursuant to section 1983 for a First Amendment violation. He may
not, therefore, also seek relief under the more "scarce and open
ended" "guideposts" of substantive due process. Collins v. Harker
Heights, 503 U.S. 115, 125 (1992).

## C.   Qualified Immunity

Making no distinction between claims, defendants generally
submit that "their actions are protected from damages under the
doctrine of qualified immunity." Under the qualified immunity
doctrine, public officials are entitled to immunity from liability
from civil damages insofar as their conduct does not violate
clearly established statutory or constitutional rights of which a
reasonable person would have known. Harlow v. Fitzgerald, 457 U.S.
800, 818 (1982). In deciding this issue, courts must "ascertain
what a reasonable person would have known as to the state of the
law at the time of the alleged unlawful acts, not what the actual
answer is in the particular case." Rodriguez-Burgos v. PREPA, 853
F.2d 31, 34 (1st Cir. 1988). Officials sued in their official
capacities may not take advantage of a qualified immunity defense.
Brandon v. Holt, 469 U.S. 464, 472-73 (1985). The Court,

therefore, considers defendants' eligibility for the defense only in the context of claims brought against them in their individual capacities.

Defendants argue that they are entitled to qualified immunity because their actions were consistent with "clearly established statutory or constitutional rights regarding the termination of a high ranking public official."  (Docket No. 59 at 41)  Defendants offer three sources of authority in support of their argument. First, defendants refer to "federal jurisprudence" that establishes plaintiff as a "principal officer" who performs "purely executive" functions.  The Court is not persuaded by defendants' first source of authority because they fail to cite or elaborate on any "federal jurisprudence."  Second, defendants argue that their actions were reasonable in light of the fact that PRCPB board members are subject to removal for political affiliation under the Elrod-Branti exception.  A reasonable person having thoughtfully read the Act's provisions and governing law would not have reached this conclusion.  Defendants offer vague, unsupported allegations that plaintiff actually participated in executive-level policymaking decisions.  Vague allegations, however, will not suffice to establish a qualified immunity defense.  Third, defendants argue that they are entitled to qualified immunity because defendants' conduct rose to the level of "insubordination," meriting discharge under McCrillis v. Autoridad, 123 D.P.R. 113 (1989).  Defendants

one-line argument raises issues that have not been adequately briefed for the Court's consideration, even though the Court twice requested briefing after the Supreme Court or Puerto Rico's certification opinion.[32]   See *supra*, at 14, n. 23.   They are therefore waived.  More importantly, the law governing this issue has no bearing on plaintiff's section 1983 claims.[33]  To the extent plaintiff's alleged "insubordination" might serve as a defense for defendants, it is properly considered in the context of Mt. Healthy's burden-shifting analysis.   For the forgoing reasons, defendants' plea for qualified immunity fails.

---

[32] Defendants essentially request the Court to determine whether plaintiff's position on the Order's inapplicability is correct and whether or not the Order is contrary to law.

[33] With respect to plaintiff's political discrimination and retaliation claims brought for alleged violations of the First Amendment, the relevant issues are whether defendants acted with a politically-based discriminatory animus and whether defendants can prove that they were motivated by a non-discriminatory basis for plaintiff's dismissal.  The issue of whether the non-discriminatory basis offered by defendants (i.e., "insubordination") constitutes "just cause" under section 503 of the Act and whether plaintiff was actually insubordinate are not relevant to the determination of plaintiff's political discrimination and retaliation claims.  With respect to plaintiff's procedural due process claim, the issue is whether plaintiff received adequate process prior to his dismissal.   Plaintiff's due process claim does hinge on whether plaintiff's actions constituted insubordination, as alleged by defendants.

**D.   Plaintiff's Pendant Claims**

   **1.   Eleventh Amendment Immunity**

         Defendants move for dismissal of plaintiff's pendant
claims under the Eleventh Amendment.  The Eleventh Amendment[34] bars
suits brought by citizens in federal courts against any state,
including "official capacity" suits against state officials.[35]
Under the Ex Parte Young doctrine, the Eleventh Amendment's
proscription does not extend to suits seeking prospective
injunctive relief against state officials for constitutional
violations.  See Ex Parte Young, 209 U.S. 123 (1908); Edelman v.
Jordan, 415 U.S. 651, 666-67 (1974).  Notably, the Ex Parte Young
exception cannot be applied in suits against state officials
brought on alleged violations of state law.  Pennhurst State School
& Hospital v. Halderman, 465 U.S. 89, 106 (1984).

         A suit formerly brought against a state official in his
official capacity may be treated as a suit against the state if
"'the state is the real, substantial party in interest.'"
Pennhurst State School & Hospital v. Halderman, 465 U.S. 89, 98-100
(1984) (quoting Ford Motor Co. v. Dept. of Treasury, 323 U.S. 459,

---

[34] The Eleventh Amendment of the U.S. Constitution provides: "The Judicial
power of the United States shall not be construed to extend to any suit
in law or equity, commenced or prosecuted against one of the United
States by Citizens of another State, or by Citizens or Subjects of any
Foreign State."

[35] The Eleventh Amendment's protection from suit extends to Puerto Rico.
Torres v. Puerto Rico Tourism Co., 175 F.3d 1, 3 (1st Cir. 1999).

464 (1945)).  Generally, if the relief requested against a state official would operate against the state, then the state is considered the real party in interest.  Pennhurst, 465 U.S. at 101.

Relying exclusively on Pennhurst, defendants take the position that plaintiff's pendant claims are barred by the Eleventh Amendment and should therefore be dismissed.  Defendants offer two arguments in support of their position.  First, defendants argue that pendant claims brought against defendants in their official capacities for injunctive relief should be dismissed under Pennhurst because defendants are immune from liability for claims based on state law violations.  The Court completely agrees.  Next, defendants argue that plaintiff's pendant claims brought against them in their individual capacities for damages are actually suits against the state and hence, barred by the Eleventh Amendment.  Defendants offer no explanation as to how a monetary damage award here might actually operate against the Commonwealth.  The Court is not persuaded by defendants blanket assertion.  Accordingly, the Court **GRANTS** defendants' motion to dismiss all pendant claims brought against defendants for injunctive relief.  Plaintiff's pendant claims brought against defendants in their individual capacities, however, stand.

## V.   CONCLUSION

For the above stated reasons, defendants' motion is **GRANTED IN PART AND DENIED IN PART** and plaintiff's cross-motion is **GRANTED IN PART AND DENIED IN PART**.

Defendants' motion for summary judgment on plaintiff's political discrimination is **DENIED** and plaintiff's cross-motion on that issue is **DENIED**.

Defendants' motion for summary judgment on plaintiff's political retaliation claim is **GRANTED** and plaintiff's cross-motion on that issue is **DENIED**.

Defendants' motion for summary judgment on plaintiff's prior restraint claim is **GRANTED** and plaintiff's cross-motion on it is **DENIED**.

Defendants' motion for summary judgment on plaintiff's due process claim based on deprivation of property is **DENIED** and plaintiff's cross-motion on that issue is **GRANTED**.

Defendants' motion to dismiss plaintiff's due process claim based on deprivation of liberty interest is **GRANTED** and the plaintiff's cross-motion on that issue is **DENIED**.

Defendants' motion to dismiss plaintiff's substantive due process claim is **GRANTED** and plaintiff's cross-motion on that issue is **DENIED**.

Civil No. 01-1202 (FAB)                                                     47

Plaintiff's pendant claims brought against defendants for injunctive relief are **DISMISSED WITHOUT PREJUDICE.**

Additionally, the claims against unnamed defendants John Doe and Richard Roe are **DISMISSED WITH PREJUDICE.**

**IT IS SO ORDERED.**

San Juan, Puerto Rico, December 9, 2009.

<u>s/ Francisco A. Besosa</u>
FRANCISCO A. BESOSA
UNITED STATES DISTRICT JUDGE